*Margin note:*
SHAEFER
*vs*
GATES AND WIFE.

Proof of unsoundness, and opposing proof contrasted, and found insufficient to prove unsoundness.

---

## Shaefer *vs* Gates and Wife.

APPEAL FROM THE JEFFERSON CIRCUIT.

*Writs of right. Judgments. Void and voidable. Lapse of time. Maxims.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

THIS is an appeal from a judgment in favor of the demandants, *Guerdon Gates and wife,* for four-fifths of a lot in *Louisville,* rendered on a verdict on the general *mise,* in a *writ of right,* demanding the entire lot, against the tenant, *Christian Shaefer.*

*Margin note:*
WRIT OF
RIGHT.
Case 142.

June 2.

The case stated.

Two general objections are urged against the judgment. 1st. That there was no actual disseizin, and that the judgment, in such an action and on such an issue, could not be rendered for a part of the land involved in the issue; and, 2nd, That the land was sold and conveyed in the year 1813, under an execution on a judgment against *Sullivan's* heirs, of whom *Mrs. Gates* was one, and that the judgment, however erroneous, was not void.

These objections will be considered in their numerical order.

*A purchase under a void judgment confers no right of entry, & any entry under such purchase is void and a disseizin.*

1. There was proof of actual seizin by the female demandant and her co-heirs, antecedently to the entry of the purchaser under the judgment against them. That seizin was certainly sufficient for maintaining this action; and we are authorized to presume an actual disseizin, if the judgment against *Sullivan's* heirs was void; for without a valid judgment, the sale and conveyance passed no title, and, of course, the entry by the purchaser on the actual possession of the heirs was tortious and should be deemed an actual and illegal disseizin.

*Demandant in a writ of right may recover to such extent as he may show title, tho' it be less than his writ demands.*

And the statutory law of this State having abolished the unreasonable common law rule that, unless a plaintiff prove title to as much as sued for, he shall recover nothing—a demandant in a writ of right, as well as a plaintiff in any other form of action, may recover less in extent or interest than his writ demands or the mise embraces: *Green* vs *Liter*, (8 *Cranch*, 229.)

2. *William Sullivan*, the ancestor of *Mrs. Gates*, died intestate in the year 1804, the legal owner of the lot now in contest, and having five children, all infants, and of whom she was the youngest. In February, 1813, *Gabriel J. Johnson* brought an action against the decedent's administrator and infant heirs, all of whom were then non-residents, except one who had intermarried with *James W. Denny*, and resided in *Louisville*. On the 10th of February, 1813, the writ was issued against the administrator, *Denny* and wife, and the four other infant heirs, and was returned executed on all except the said four infants. On the day after the issuing of the writ, an order was made nominating *Denny* guardian *ad litem*, to defend for those four non-resident infants. And the record

shows that, on the 6th of May, 1813, "the defendants not appearing," a judgment by default was rendered against the administrator and all the heirs of *W. Sullivan*. The appellant holds all the title acquired by the purchaser of the lot under an execution on that judgment, and in virtue of which the lot was sold by the sheriff.

All the co-heirs of *Mrs. Gates* having died childless and intestate, their titles. all passed to her by survivorship.

Upon these facts it is evident that, if the judgment against four of the heirs of *Sullivan* should be deemed merely erroneous, the demandant was not entitled to the recovery now sought to be reversed, but that, if that judgment should be adjudged *void* as to these four infant heirs, upon whom there was no service of process, the judgment, as rendered in this case, for four fifths of the lot, was right and should be affirmed.

In a legal or available sense, no person is a party to a suit without either an appearance or judicial notice of some sort. And there can be no doubt that a judgment against a person who was never made a party is utterly void.

> No person is a party to a suit or bound by a judgment therein, without voluntary appearance, service of process, or judicial notice of some sort.

The record of the judgment of 1813, certified to be a true and perfect transcript, does not show that the four infants, for whom a guardian *ad litem* was nominated, were ever served with process; and their non-residence proves affirmatively, that there had been no service on them or any of them. If they could be deemed parties they must, therefore, have been made so only by the nomination of *Denny* as their guardian *ad litem*. But there is not a vistige of proof of his acceptance or even knowledge of the trust allotted to him. And the record, moreover, expressly shows that he neither made any defence nor appeared in the action, either as party or guardian. It is true that the official return states that the writ was served on *Denny* as a party and also as a guardian *ad litem*.

> The appointment of a guardian *ad litem* to infants, who are never served with process, does not make them parties, and especially where such guardian does not make his appearance in the case by plea or otherwise show his acceptance of the appointment.

But that return, as to service on him as guardian, is necessarily false or void: 1st, because the writ was not against him as guardian *ad litem*, and he was not even nominated guardian until after the writ was issued, and

> The service of process by the sheriff, on one as guardian *ad litem*, before his appointment as

SHAEFER
*vs*
GATES AND WIFE.

such, is unau-
thorized, and a
return to that ef-
fect extra official
and void, and
furnished no evi-
dence to such
person that he
was guardian *ad
litem.*

does not appear even to have accepted or assumed that
relation; and, 2ndly, because the sheriff, having no ap-
parent authority to serve the writ on *Denny as guardian,*
an actual service on him in that character, was void, and
the return thereof, altogether extra-official.

But if that return could be accredited for any purpose,
it imports only that the sheriff, having served the writ on
*Denny* and understanding that he was sued in his own
right, and had also been named as the representative of
the non-resident infants, supposed that the actual service
of the writ on him was co-extensive, in effect, with his
two-fold character in the suit. But the writ not being
against *Denny* as guardian, nor describing him as such,
the service of *it,* which was all the sheriff was authorized
to do, was no notice to him that he had been nominated
guardian *ad litem* to defend for the non-resident infants.
The return, therefore, even had it been official and true,
furnishes no proof of any notification to *Denny* of his
nomination as guardian *ad litem.*

Notice to one, of
his appointment
as guardian *ad
litem,* does not,
in any available
sense, make
those for whom
he has been ap-
pointed, defen-
dants in any judg-
ment against
them. The re-
cord, to bind in-
fants, must show
that they were
parties to the ac-
tion in some le-
gal and effectual
shape.

But had *Denny* been notified of his nomination as
guardian, he was not bound to accept the responsible
trust; and without his acceptance, the non-resident in-
fants could not have been parties in any legal or available
sense. And it is indispensable to the *validity* of the
judgment against them, that the record of it should show
that, *in some legal and effectual mode, they had been made
parties to the action.*

The record does not intimate even *Denny's* acceptance;
and his non-appearance is evidence rather of his non-ac-
ceptance, for had he accepted, it was his duty to appear,

The Court should
never render
judgment against
infants, but on
plea filed for
them, or on be-
ing satisfied by a
guardian *ad li-
tem,* that after
vigilant effort he
could ascertain
no useful de-
fence to the ac-
tion.

and it was also the duty of the Court, either to compel
his appearance or substitute some other person who
would appear and represent the infants, either by making
a proper defence or by satisfying the Court that he had
been vigilant and faithful, and had ascertained that no
defence could be usefully made.

This case differs essentially from that of *Bustard* vs
*Gates and wife,* (4 *Dana,* 439.) In that case, in which
a judgment had been rendered against the same non-resi-
dent and infant heirs of *William Sullivan,* a guardian
*ad litem* was notified of his appointment, accepted, ap-

peared, and defended the suit. In this case the record not only does not show that *Denny*, who was nominated guardian, either accepted or was notified of the nomination, but it proves conclusively, for all time, that he neither made defence nor appeared to the action. Can such *ex parte*, surreptitious judgment against non-resident infants, without any defence or appearance for them, or even notice to them or any person acting or undertaking to act for them, be deemed valid and binding on them? Can it be gravely alledged that they were ever made parties to the suit? We think not. This, it seems to us, is the inevitable deduction from the facts exhibited by the record. And had the question as to the validity of the judgment been litigated within a year after it was rendered, we cannot doubt that the judicial response must have been, *una voce,* that the judgment was void.

Did the lapse of 23 years prior to this suit, infuse vitality and vigor into that which was thus born dead? Has a judgment, once void, been made valid by time? Justice and the repose of society have induced the adoption of many legal presumptions; and among these is that which after a long lapse of time, cures *irregularities* in judicial proceedings, and assumes that every thing that was done was "*solemnly and rightly done,*" and that, also, which even presumes, in some rare cases, that an *unfound record* once existed. But time can never authorize the presumption that an *existing record,* apparently complete and perfect, is not substantially what it always was, and especially that any thing which it expresses or imports is false. The legal maxim "*omnia presumuntur rite et solemniter esse acta donec probitur en contrarium,*" applies not to such a case.

To sustain an ancient judgment, time may authorise the presumption of an extraneous fact which the record does not contradict, and which it was not indispensable to the validity of the judgment that the record should exhibit. This is as far as either reason or law will presume as to facts not appearing in an existing and apparently unmutilated record of a judgment. And no such presumption can, in our opinion, aid the record in the case now before us.

SHAEFER
*vs*
GATES AND WIFE.

Lapse of time may cure irregularities in judicial proceedings, but not such as appear to have been void, and no suggestion of any mutilation by lapse of time.

Time *may* authorize the presumption of an extraneous fact which the record does not show, and which was indispensable to the validity of a judgment, and which the record *should* exhibit.

SHAEFER
vs
GATES AND WIFE.

This Court will
not presume that
a guardian *ad
litem* appeared
for infants, when
the record shows
the reverse, ex-
pressly to up-
hold a judgment.

We cannot presume that *Denny*, as guardian *ad litem*, or otherwise, appeared to the action, for the record affirms expressly that he did not appear, and that the judgment was by default. Nor, for the reasons already suggested, can we presume that he either acted as guardian or accepted the nomination, or even had notice of the fact that he had been nominated; and the sheriff's return itself strongly corroborates this conclusion, for the fact that such a return was procured and recorded as evidence of notice tends strongly, if not conclusively, to prove that there was no other notice nor any other evidence of notice to *Denny* of his nomination as guardian. But the record proof that he never appeared is record evidence also of the resulting fact that he never acted or even assumed to act as representative of the infants in defending that suit for them or making any preparation for defending it.

And if, in any such case, an implied acquiesence could aid the judgment, the continued disability of *Mrs. Gates* would be sufficient to repel the force of any such presumption in this case.

That which was
void *ab initio in
tractu temporis
non convalescit.*

It seems to us, therefore, that the only judicial deduction now must be, as it should have been the day after the date of the judgment, that the non-resident infants, even if the Court had jurisdiction over them, were never, in fact or in law, made parties to the suit. The judgment as to them *was*, therefore, void. And such a judgment, adjudged to have been once void on such grounds, cannot even yet be deemed valid. To such a case, as much as to any other, should be applied the legal maxim that—*that which was void "ab initio, in tractu temporis, non convalescet."*

We are, therefore, of the opinion that the demandants were entitled to the judgment, as rendered in their favor, for four-fifths of the lot; *Mrs. Denny's* fifth having passed to the purchaser under the execution, because, as she was a party, the judgment on which that execution was issued, was not, as to her, void.

It is, therefore, considered that the judgment for the demandants be affirmed.

*Pirtle and Duncan* for appellant; *Thruston and Loughborough* for appellees.