Mr. Justice Walker, dissenting. In this case it appears from the record that Robinson brought suit in the name of the State for his use against Borden and his securities upon the official bond of Borden as sheriff, in which it was alleged as a breach of the bond, that he had failed to levy and make the debt and costs as commanded in a certain writ of M. Fa. issued in favor of Robinson ¿gainst Woodruff, Executor. Upon an issue of nul tiel record of such recovery, the plaintiff offered in evidence the transcript of_a record of an allowance of the debt in the fi. fa. mentioned, and also an order directing the executor (Woodruff,) to pay the same. To the admissibility of these orders it was objected that although the demand or claim presented to the consideration of the probate court was a subject matter over which it might rightfully entertain jurisdiction, yet inasmuch as no notice whatever was given to the defendant Woodruff, and he not having in any manner made himself a party to the record by appearance or otherwise, that the probate court, in the absence .of such jurisdiction over the person of the defendant, could not make a valid order or render any judgment which would bind him, or subject his estate to sale for the payment thereof, and that the adjudication and allowance of the claim and the order for its payment were in fact void. The transcript offered in evidence discloses no fact from which the remotest inference may be drawn that any notice was ordered or issued, or that Woodruff had any notice actual or constructive, or that he was present or made any appearance, or that he was called to defend, but simply that the plaintiff appeared by attorney, and that the court first examined and allowed the claim. And thereafter at a subsequent term, on motion of the plaintiff's attorney ordered it to be paid. Under this stale of case the main, indeed the only question of importance is, whether the probate court in a proceeding in per-sonam, as this is, can proceed to render judgment upon the subject matter, until it has by some means acquired jurisdiction of the person of the defendant; or in other words, whether jurisdiction of the subject matter alone is sufficient to authorize a court, not of inferior jurisdiction, to render a valid judgment, binding upon the person and the estate of the defendant. If I correctly understand the opinion delivered by my brother judges in this case, it assumes the affirmative of this proposition and whilst they admit that such proceeding may be set aside for error, they hold that the judgment so rendered is valid and binding on the defendant, and sufficient to uphold a sale of his estate under it, and to justify the court that rendered the judgment, and the officers and others who executed it. With great deference, my mind, after a careful examination of authorities, has been lead to a different conclusion. And it becomes my duty under the law to express my individual dissenting opinion upon the several interesting points which are involved in the case. Premising that my position is assumed alone in reference to proceedings in personam, in contradistinction to proceedings in rem, and that I do not controvert the position that the court of probate, having been created by the constitution, although of limited and defined constitutional jurisdiction, is nevertheless not an 'inferior court of limited jurisdiction in the sense in which that term is used, I shall first take a brief review of the grounds upon which the right of jurisdiction as contended for is supposed to rest and the authorities brought to its support. One of the strongest arguments used in support of the jurisdiction of the court is, that as it must necessarily in a greater or less degree be the judge of its own jurisdiction, the fact that it has assumed and exercised such jurisdiction presupposes that it has passed its judgment in favor therof, and that to hold a judge accountable for an error of iudgment could not be sanctioned, as it would strike at the independence of the tribunal itself. This seems to me to be assuming a right to avoid a consequence, and even if placed upon this ground there are consequences on the other side which might be not less weighty and worthy of consideration. If it be true that a judge is entitled to exercise a jurisdiction with impunity, because he himself has decided that he possessed it, then indeed to my mind all distinction of jurisdiction is broken down, and the only rule in future must be the will of the judge, or that he has jurisdiction because he has exercised it. I must not be understood as assuming that the opinion goes to this extent; but then if it is to be indulged in one single instance, the principle is admitted and it may with equal propriety be applied to any and every case, even the most extreme or absurd; for although such extreme case might tend to fix upon the judge a wanton abuse of power, it never could affect the principle itself upon which the judge acted. To the contrary of this, I hold that ours are courts of defined, constitutional jurisdiction with regard to the subjects over which such jurisdiction is to be exercised, and so far as the subject matter is concerned, they must at their peril take notice that they do not exceed it or usurp that which properly belongs to some other tribunal. But so far as regards the manner of presenting the subject matter to the consideration of the court, no matter how imperfect or illogical the pleadings may be, if the cause itself be such as the court, by any possible form of presentation, could take jurisdiction of it. The court, in passing upon the facts necessary to present such subject matter properly before it so as to fix a legal liability upon the defendant, would have a right to decide, and whether such decision should be right or wrong, the proceeding, so far as that branch of the inquiry extends, would not be absolutely void but might be erroneous, and if the ascertainment of that fact alone was sufficient to empower the court to proceed to judgment, then it would be true that the court and all persons acting under its authority, would be protected by its decision. To make myself fully understood 1 will suppose a case, an extreme one it is true, but not the less appropriate for that reason. Suppose a declaration or statement in writing to be filed setting forth a contract for $500, bat without date or any averment that it was due, or had not been paid; although it is evident a demurrer should be sustained to such a declaration, yet1 if the court should erroneously decide it good and render a judgment upon it, such judgment would not lor this reason be held void; because the subject matter being within the jurisdiction of the court, its decision as to the proper averments to charge the defendant, no matter how erroneous, was made in the exercise of judicial discretion upon a matter of law, as to the sufficiency of such averments. But suppose, instead of such contract, there should be inserted in the statement in writing filed, a copy of “ The Hymns to the Gods,” and the court should be so lost to common sense and right as to render judgment upon it against its distinguished author, would any one contend that such judgment would not be void ? And yet if the court is to be the judge of its jurisdiction and is to be protected in such judgment because it has so decided, whether of the subject matter or of the manner of presenting it, it necessarily follows that the judgment would be as valid in the one case as in the other. For if it is once admitted that the court has a discretionary power in regard to the subject matter itself, which when exercised will protect it in any one instance, the principle is conceded, and it must of necessity be extended even to the extreme case we have put. It will not do to say that it shall be protected where its judgments have been reasonably exercised in doubtful cases ; that would be sitting in judgment upon the exercise of a discretionry power, and if applied to the subject matter itself, might also be applied to every opinion of the court upon law or fact submitted to it. The only safe rule then to my mind is to hold the court at its peril to keep within its jurisdiction, but' to protect it fully in the free exercise of its discretion, in determining all questions which may arise in adjudicating upon such doubtful matter. Another position assumed in support of the validity of judgments rendered without notice to the defendant is that courts of general jurisdiction have jurisdiction over all persons within their territorial limits, which of itself, without notice, confers sufficient jurisdiction over the person of the defendant to uphold the judgment at least until reversed for error. Unless we could suppose that the citizen is bound to take notice of the proceedings of courts, as they are of public laws, this amounts to saying that their rights may be passed upon and their property taken by judicial determination unheard and undefended by them, and if this rule is to prevail in civil proceedings, where the rights of property is involved (saving perhaps some additional constitutional protection) it is difficult to see why life, liberty and reputation may not also be sacrificed under it; for I think I can show that all of these are natural inherent rights and so closely connected that they must stand or fall together. That life and liberty preceded the right to property (as asserted) is a matter of but little moment. Concede it to be true that the right to hold and enjoy the use of property to the exclusion of others, that it grew up with and not before organized society, still the use of the one is so connected with the enjoyment of the other, that to impair or abridge the one materially affects if it does not destroy the other. When the means necessary to support life are withdrawn, it is a mockery to say that life is protected or secured. Without however entering into a metaphysical disquisition as to whether the right to be notified and afforded an opportunity to defend the one or the other is a natural or a conventional right, I will content myself with a reference to authorities of acknowledged weight. In Rex vs. Cleg, 1 Str. R. 475, Foutesque, J. said, “It is certain that natural justice requires that no man should be condemned without notice.” In Bloom vs. Burdick, 1 Hill R. 139, Bronson, J. said, “ It is a cardinal principle in the administration of justice that no man can be condemned or divested of his rights until he has had the opportunity of being heard.” In Bustard vs. Gates and wife, 4 Dana R. 435, Robertson, C. J. said, “ It is a general rule of the common law and of common sense, as well as of common justice, that a court has no jurisdiction to render a judgment against a person, who has had no notice whatever of the proceedings against him.” In the case of The Mary, 3 Cond. U.S. R. 312, Marshall, C. J. said, “ But notice of the controversy is necessary in order to become a party. And it is a principle of natural justice, of universal obligation that, before the rights oí an individual be bound by a judicial sentence, he shall have notice either actual or implied of the proceedings against him-” In Boswell's lessee vs. Otis et al. 9 How. U.S. R. 350, McLean, J. said, “ No principle is more vital to the administration of justice than that no man shall be condemned in his person or property without notice and an opportunity to make his defence.” In the face of these authorities, embracing the opinions of the most distinguished and profound jurists in the highest English and American courts, including their latest published opinions, can it be said that this right to be heard in defence of property is not a “natural right of universal obligation” ? And if such then it is evident that such notice is indispensably necessary to the validity of a judgment against the person. But, secondly, I insist that notice is not only a “ natural right of universal obligation,” as shown most conclusively from the authorities cited, but it is also a constitutional reserved right excepted out of the general powers of the government and declared to be “ inherent and indefeasible,” and placed in the bill of rights upon the same footing with life, liberty and reputation and with them it must stand or fall. The 1st sec. art. 2 const., ordains “ That all freemen, when they form a social compact are equal, and have inherent and indefeasible rights, amongst which are those of enjoying and defending life, and liberty, and of acquiring, possessing and protecting property and reputation and of pursuing their own happiness.” Sec. 10, “ That no freeman shall be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or law of the land.” Thus in each of these sections, the one asserting the rights and the other limiting the' means by which they may be affected, these great essentials to freedom and human happiness are presented together, and the like safeguards thrown around each, and for the express purpose that they may be “ enjoyed and defended,” and the authority to invade the one necessarily implies a like authority to invade either of the others. They are not to be invaded either directly or indirectly. To confer a right necessarily imples a right to use the means necessary to protect it; and when it is said that the citizen shall not be deprived of these rights but by the judgment of his peers or the law of the land, the privilege to appear and defend such rights and for that pupose to have notice of the time when, the place where and the tribunal before which such trial is to be had necessarily follows; or the reservation, to my mind, is a dead letter as to each. So that, in the absence of all other authority than these express constitutional provisions, notice is indispensably necessary to the validity of the proceeding. Nor do I think it can be successfully contended that this right to notice was not a common law right, and has been so recognized fromits earliest history. By the common law practice, suite were commenced by an original writ sued out of chancery. When this writ was served, if the defendant failed to appear, a judicial writ issued to bring him into court, where at an early day, he appeared alone in person and made oral pleadings. This practice was abandoned, so far as respects the original writ, the personal appearance and oral pleading, but the judicial writ was continued in use although the party usually appeared by attorney, the writ was served upon the defendant and he was in contemplation of law in person or by attorney in court before the declaration was filed against him, and as the writ after performing its office was not considered part of the record, when the record failed to show an appearance of the defendant it was nevertheless presumed that such was the fact. This doctrine of presumptions, so reasonable and-almost indispensably necessary (holding the writ to be no part of the record, as the English courts did) was not however based upon the ground that notice was not necessary, but the very reverse, that it had really been given. So, with regard to the practice in New York, where the writ is no part of the record, the doctrine of presumptions in favor of the court’s having proceeded upon due notice (although not apparent upon the record) has to some extent prevailed; yet even in that court I can find no case where the proceeding was against the person, that the doctrine, for which I contend, has been shaken. Hilburn vs. Woodworth, 5 John. Rep. 41. Roberson vs. Executors of Ward, 8 id. 90. Fenton vs. Garlick, id. 196. Pawling vs. Bird's Executors, 13 id. 192 and Borden vs. Fitch, 15 id. 142, are all cases showing that, in proceedings against the person, notice to the defendant is indispensably necessary to the validity of the judgment. Thompson, C. J. in the last cited case says, “That to bind the defendant personally, when he was never personally served, nor had notice of the proceedings would be contrary to the first principles ofjustice.” When this point was subsequently raised in 17 Wend. 484, Foot vs. Stevens, the whole decision was made to turn upon the effect of the omission of the words “ in custody” &c. in the declaration. Cowan, J. said “ The pleader let slip the words “ in custody &c.” and under the state of case, the court on the express recognition of the doctrine of presumptions in favor of the regularity of the proceedings of that court decided in favor of jurisdiction, but not that notice was not necesary. In the case of Hart vs. Seixas, 21 Wend. 53, the same omission appeared in the declaration as in the case in 17 Wend, and, waiving the doctrine of presumptions, the court decided that the record showed affirmatively that the party appeared. Cowan, J. said “ Although it does not appear directly on this record that the defendants were served, I think it is virtually declared that they appeared in the cause; it states an imparlance with Hart and Bush at the September term.” The case of Bloom, vs. Burdick, 1 Hill, was a proceeding in rem before the Surrogate to sell certain lands. The administrator petitioned for the sale and set out substantially such facts,as would be required by our statute to authorize our probate court to make sale of an intestate’s lands for the purpose of paying debts &c. Bronson, J. said, “ The Surrogate undoubtedly acquired jurisdiction of the subject matter on the presentation of the petition and accounts; but that was not enough. It was also necessary that he should acquire jurisdiction over the persons to be affected by the sale.” And in the same case it is af-terwards said, “ It is not only a general principle in the law that courts must acquire jurisdiction over the persons to be affected by their judgments, but in relation to these sales the statute has specially pointed out the means and imposed the duty to bring the parties before the court.” It is to be remarked in this case that the courts of New York held the Surrogate’s court to be one of inferior jurisdiction, and for that reason perhaps it was that although this was a proceeding in rem, they decided that notice to the persons interested should be given. Still the general doctrine of notice is broadly and unqualifiedly asserted, and after reviewing the decisions in 17 and 21 Wend, it is said by Bronson, J. page 141, “ But the principle remains untouched that whenever the want of jurisdiction appears the judgments of any and all courts will be void, and when the party in interest is to be brought in by means of public notice the want of such notice will be a fatal defect.” And in a still later case the sanie court, 1 Barber Rep. 289, In the matter of Flatbush Avenue, comes directly up to the support of the position I have assumed in regard to the constitutional rights of the citizen. It was a case where an attempt was made without notice to the owner to appropriate private property for public use. Edmonds, J. said, “ Under our institutions no man can be deprived of his rights save by the law of the land or the judgment of his peers. Amongst the rights thus protected is the right of private property.” And in that part of the opinion relating to notice to the owner of the land, he said, “ It is an, inflexible rule of law that no man shall be deprived of his property without an opportunity of defending himself.” So that the doctrine of notice as indispensably necessary to the validity of a judgment against the person, is as well settled even in New York, as any doctrine can be, and when closely examined, with but little conflict of opinion anywhere. But there are a number of the other State courts (indeed all of them, so far as I can ascertain, where the question has been presented) that hold the same doctrine, and declare judgments void if rendered without notice; and some of these have gone fully as far as this court ever did, and require that the facts should affirmatively appear of record. These decisions I will briefly notice. In Tennessee, in the case of Mason vs. Killibrum, it was held that, as it appeared from the sheriff’s return that Killibrum was not found and the record did not show his appearance, “ the court had no jurisdiction of his person; therefore the judgment rendered against him in the case is void and a nullity.” (2 Yerg. Rep. 383.) The same court in the case of Sumner vs. Wood said, “there was no evidence before the court that ten of Jenkins White-side’s heirs had been notified to appear to the suit by scire facias against them, and a judgment without notice to the heirs is void. The court had no jurisdiction of the person of the defendant.” 6 Yerg. Rep. 522. In Kentucky, in the case of Shafer vs. Gates and wife, the court said, “In a legal or available point of view, no person is a party to a suit, without either an appearance or judicial notice of some sort.” (2 R. Mon. Rep. 455.) And in Wickliff vs. Dorsey the court said, “ Had there been no service of process on any of the heirs, the decree would have been wholly ex parte and therefore void.” And in the case of Curry vs. Jenkins, Hardin Rep. 493, the court said, “ Natural justice independent of any positive statutory provision clearly indicates that an orphan should not be condemned to servitude in his absence and the absence of his guardian and friend.” In Mississippi, it was held in Gwin et al. vs. McCarrall, “ That it must be shown by the record that the court had jurisdiction of the party either by service of process or by publication where that is allowed, and if there be no notice actual or constructive the judgment is a nullity.” 1 S. & M. Rep. 368. In Connecticut it was held in 1 Day’s Rep. 429, Slocum vs. Wheeler that the sentence of a court, that has not jurisdiction of the person and the. subject matter,'is an entire nullity. In Ohio, Lessee of Payne vs. Moreland, 15 Ohio Rep. 444, Reed, J. said, “ A court acquires jurisdiction by its own process. If the process of the court be executed on the person or thing concerning which the court are to pronounce judgment, jurisdiction is acquired. The writ draws the person or thing within the power of the court; the court once by its process having acquired the power to adjudicate upon a person or thing it has what is called jurisdiction. This power or jurisdiction is only acquired by its process. To give jurisdiction is the object of process.” It is worthy of remark that this is a later case than those referred to to sustain a different rule and not only reviews its former decisions but also the case of Vorhees vs. U. S. Bank, 10 Peters Rep. In New Hampshire, Smith vs. Knowlton, 11 N. Hamp. R. 191, held, “ That a judgment of a court, which has no jurisdiction of the cause, is an entire nullity. But not so, where it has jurisdiction of the cause and the parties, but only proceeds erroneously.” In Vermont, Egerton vs. Hart, 8 Verm. 208, held, that in order to render a valid judgment the’ court must have jurisdiction of the subject matter and of the person by notice. In Missouri it is held in Smith vs. Ross and Strong, that “ In order to ascertain whether there was notice, reference must be had to the proceedings prior to the judgment, and if it does not appear from them that the party was notified, we cannot infer • it because judgment was rendered against him. The judgment against Haneman, according to the principles above stated being void, the plaintiff did right in regarding it as a nullity as to him and declaring against Smith alone.” These authorities are clear and decided, going to establish, first, that notice in proceedings against the person is necessary; secondly, that if there is no such notice the judgment is absolutely void. Turning from the decisions of the highest State tribunals I will proceed to examine the decisions of the United States courts; and I think it will be found that these do not conflict with the doctrine as above laid down, but that such as would seem to favor a different doctrine, were in proceedings in rem and stand upon quite different grounds. Thus, in the case of The Mary, which was a proceeding in rem in the Admiralty court, Chief Justice Marshall takes the distinction between these and proceedings against the person, and says, “ where the proceedings are against the person, notice is served personally or by publication : where they are in rem, notice is served upon the thing itself.” In the case Voorhees vs. United States Bank, 10 Pet. Rep. 450, the validity of a sale made under a judgment by attachment came in question. The objection to the validity of the judgment under which the sale was made was that it did not appear that an order of publication had been made as required by the statute giving to the defendant notice. It was argued by Mr. Fox that the proceedings being in rem and not against the person, the seizure of the property was tantamount to personal service in a personal action. The court sustained this position and held the judgment, although erroneous, not absolutely void. The question is extensively discussed by Mr. Justice Baldwin, who dwells at great length on the importance of protecting purchasers on the faith of judicial sales. But it is a remarkable fact that there is not an authority which he cites, in which the question of notice in a proceeding against the person is presented. The case cited in 4 Cranch 328, had no relation to judgments. The question was whether an execution issuing before the day allowed by law, was void or voidable. The case of Wheaton vs. Sexton, 4 Wheaton 503, was whether a marshal’s sale after the return day was valid or not. The case of Thompson vs. Talmie, 2 Pet. 165, was a proceeding in rem for the partition of land amongst heirs by petition, setting forth all the facts necessary to give the court jurisdiction over the subject matter. It was argued by Wilde and Jones as being such and so decided by the court. In Taylor vs. Thompson, 5 Peters 370, no question with regard to the validity of judgments was raised. The case oí The United States vs. Aredondo, 6 Pet. 729, related to a grant made by Alexander Ramirez as Intendant of Cuba to certain lands in Florida. The Intendant was vested with discretionary power and his acts under such discretionary power were held valid. So that it will be seen that the only case cited by the • court which bore upon the direct question before it was that of Thompson vs. Talmie and was a proceeding in rem. McPhearson vs. Canliff, 11 S. & N. 429 : Perkins vs. Fairfield, 11 Mass. 227: Witer vs. Zane, 3 Ham. 305 and Gregnon’s lessee vs. Astor et al. 2 How. 340, are all cases in the probate or county courts for the sale of real estate to satisfy the intestate’s debts and were clearly proceedings in rem. In the case in 2 Howard, Lord and Crittenden argued that the county court had jurisdiction to order the sale of the land of an intestate for the payment of debts, and expressly based the right to sell without notice to those interested in the lands upon the ground that it was a proceeding in rem, and so the court decided : because in such cases, in the language of Chief Justice Marshall, “ notice is served upon the thing itself.” So that the decisions of the United States courts, when restricted to the particular cases under consideration may be all true, and yet in no wise controvert the position which I assume, which is, that in proceedings against the person, unless the court has first acquired jurisdiction both of the subject matter and the person, it can render no valid judgment by which either life, liberty, property or reputation can be affected. If any doubt could arise as to the correctness of the construction I have placed upon these • decisions of the United States court, that doubt will at once be removed by reference to a still later decision of that court, (indeed the very latest from that court) in which the question is- discussed, and distinctly and clearly settled. It is the case of Boswell’s lessee vs. Otis et al. reported, in 9 Howard’s (U.S.) Rep. 336, and coming from the same court whose decisions are mainly relied on in support of a different doctrine from that for which I contend, I will briefly present the facts upon which the decision was made, as well as that portion of the decision directly bearing upon the point under consideration here. Hawkins, Boswell, Barry and Whitmore were partners in building a mill on a lot in Lower Sandusky. Hawkins, who was superintending the building of the mill, filed his bill against the other partners for a settlement, averring that he had laid out a sum over and above his proportionable part of the expenses incurred in the partnership business and that the other partners had acquired title to two-thirds of the lot and refused to convey any part of it to him, and prayed a decree for any balance due him and for one-fourth of the lot. One of the defendants resided in Massachusetts; the others, in Kentucky. Notice was given by an order of publication in a newspaper according to the Ohio statute. The defendants failed to appear; the bill was taken as confessed; the master reported a balance in favor of complainant, for which a decree was rendered; and it was also decreed that the decree should have the force of a judgment at law and be a lien on all the lots of the defendants in the county, and unless paid in thirty days execution should issue as on ordinary judgments. Upon this decree exception issued and a lot of ground (not that on which the mill was built) was regularly sold and a deed in due form made to the pui’cha-ser. In an action in ejectment the question arose as to the validity of the title thus acquired. Mr. Justice McLean, who delivered the opinion of the court, states two points: “ 1, Whether or not the proceedings and decree as set forth in the record above stated are coram nonjudice.” “2, Admitting said decree to be valid, so far as relates to the land specifically described in the bill, whether or not said proceedings and decree are coram non judice and void so far as relates to lot No. 7 in controversy in this case, and which is not described in said bill in chancery, or, in other words, whether the proceedings and decree are not in rem, and so, void and without effect as to the other lands sold under said decree.” And then with regard to these points he said, “ When the record of a judgment is brought before the court collaterally or otherwise, it is always proper to inquire whether the court rendering the judgment, had jurisdiction. Jurisdiction is acquired in one of two "modes ; first, as against the person of the defendant by the service of process, or secondly, by a procedure against the property of the defendant within the jurisdiction of the court. In the latter case the defendant is not personally bound by the judgment beyond the property in question. And it is immaterial whether he proceeds against the property by attachment or by bill- in chancery. It must be substantially a proceeding in rem. The principle is admitted that where jurisdiction is acquired against the person by the service of process or by a voluntary appearance, a court of general jurisdiction will settle the matter in controversy between the parties. But this principle does not apply to a special jurisdiction authorized by statute, though exercised by a court of general jurisdiction.” And in conclusion the court in that case said, “ It may be difficult in some cases to draw the line of jurisdiction so as to determine whether the proceedings of a court are void or only erroneous. And in such cases every intendment should be favorable to a purchaser, at a judicial sale. But the rights of all parties must be regarded. No principle is more vital to the administration of justice than that no man shall be condemned in his person or property without notice and an opportunity to make his defence.” And the court proceeded to declare the decree and the sale under it absolutely null and void. After this decision, so recently made by the highest judicial tribunal in the United States, in full and unqualified terms adopting the position assumed by Chief Justice Maeshall in the case of The Mary, is it to be supposed that, if the doctrine laid down in 10 Peter and 2 Howard and the other decisions in support of them, conflicted with this, or did not, as I contend, apply to a very different class of cases, they would have passed unnoticed by the counsel and the court in this case; or that had these decisions been intended to controvert the doctrine laid down by Chief Justice Marshall in the case of The Mary, none of the judges would have referred to and have overruled it or reconciled such conflict of opinion? I think not. And this late decision most clearly marks the true distinction to be observed in all these cases and the point upon which each is made to turn: thus, that “jurisdiction is acquired in one of two modes ; first, against the person of the defendant by service of process; or secondly, by a procedure against the property of the defendant within the jurisdiction of the court.” In this latter case the judgment is never binding on the defendant beyond the property that is brought before the court: it is a proceeding in rem, and in this case where the proceeding was against lot No. 9, and the decree was against the defendants for a sum of money found due in relation to improvements on lot 9, with a decreed lien on the real estate within the county, under which decree lot 7 was sold, although there was notice by publication, the court held the decree void and the sale under it void because it required jurisdiction over the subject matter and over the thing also in order to confer power upon the court to render judgment; and if it required that the thing should be brought before the court in proceedings in rem in order to confer jurisdiction and power in the court to bind the thing and make a valid decree in regard to it, does it not follow also, as a fair and necessary deduction that in proceedings against the person it requires jurisdiction of the person and also of the subject matter before the court can render a valid judgment, and if void in one instance, for like reason it is void in the other. “A court acquires jurisdiction by its own process. If the process be executed on the person or the thing concerning which the court are to pronounce judgment, jurisdiction is acquired. The writ draws the person or thing within the powers of the court. To give jurisdiction is the object of process.” (15 Ohio Rep. 444.) “ Where the proceedings are against the person, notice is served personally, or by publication; where they are in rem notice is served upon the thing itself.” Chief Justice Marshall’s opinion in the case of The Mary. “ Where jurisdiction is acquired against the person by the service of process or voluntary appearance, a court of general jurisdiction will settle the matter in controversy between the parties.” (9 How. U. S. Rep. 348.) “No principle is more vital to the administration of justice than that no man shall be condemned in his person or property withoutnotice and an opportunity to make his defence.” Id. 350. And again it is said “ Jurisdiction is notto be assumed and exercised in such cases upon the general ground that the subject matter of the suit is within the power of the court.” Id. 350. Lord Ellenbohough said, “ If a judgment could thus be recovered against one behind his back, a man would have nothing more to do but to go to Tobago, there sue us to any amount and then return to this country to put his judgment in force against us.” 1 Campbell's Rep. 66. Chief Justice Robinson said in 2 B. Mon. 455, “In a legal or available sense no person is a party to a suit without either an appearance or a judicial notice of some sort.” In view of these authorities (and so far as regards proceedings against the person there is not one within the range of my research to the contrary) I think I may safely say, that the right to be heard and to' defend life, liberty, property and reputation is a natural, inherent right of universal obligation; that it is an inherent, indefeasible, constitutional right, and that it is a common law right commencing with the earliest history and never dispensed with in any government, where these rights are recognized or protected by the government: that before a judicial tribunal can render any judgment whatever binding on either, it is indispensably necessary that the court, either by its process or by voluntary appearance, should first have acquired jurisdiction of the person of the defendant as well as of the subject matter. And that a judgment rendered by any court without a concurrence of these is absolutely void. It is to the writ and the return upon it (unless in cases of statutory notice by publication, as to the effect of which I need not now pause to consider) that the court must look for jurisdiction of the person, or to the record, for a voluntary appearance. it may be well, in order to show more clearly my views upon, the subject of presumptions, which I will presently notice, for me to refer to the effect of an informal or defective service of the writ. Where an attempt has been made by the proper officer to execute a writ (not void) by any of the modes prescribed by law, although the return is defective; yet as the legal sufficiency of the return is a matter for the consideration of the court, like the legal sufficiency of the declaration is, although the court may err in its judgment, yet as the court had a right to decide and is presumed to have decided upon if, although it might be revei-sed for terror it would until reversed uphold the judgment of the court. Where however the writ has no return, there are no facts upon which the judgment of the court can act, nothing to judge of, and therefore no judgment could be rendered. It would be like declaring a blank paper filed, a declaration, and assuming jurisdiction of the subject matter upon the strength of such judgment. Should the writ be lost and it was made to appear that one had issued, then in its absence we might presume in favor of service, but not where there was nothing to show that a writ issued. That would be basing a presumption upon a presumption ; first, that there was a writ, and then that it was served. This is never permissible. I do not intend to be understood as assuming that every fact necessary to confer jurisdiction on a court of superior jurisdiction must affirmatively appear of record. In this I think the former de cisions have gone too far. Every reasonable presumption in favor of the rightful exercise of jurisdiction ought to be indulged. But where the record (the writ and return being taken as part of it) respels the presumption of notice, as in case the writ should be returned “ not found,” and the record should state that the defendant made default, there no ground for presumption would exist; for the writ would negative the presumption of service, and the record, or voluntary appearance; and as these are the only legal means by which the court could acquire jurisdiction of the person (unless by publication, and then the record would show that fact if it existed) no presumptions could be indulged. Presumptions are deductions from known facts, and are strong or slight according to the number and conclusiveness of the facts from which they are drawn. According to the English practice there was strong ground in favor of the doctrine. There the writ is no part of the record, and the declaration is not filed until after the writ has been returned, as there is nothing on the writ to repel the presumption, and as it is no part of the record, there is nothing to weaken the presumption upon the record it-' self. But in this as in nearly all of the southern and western States, the declaration is filed before the writ issues, and the writ is held to be part of the record. There is consequently less ground for presumptions than under the English practice, because the fact that the declaration is filed here furnishes no evidence whatever upon which a presumption could rest; and so far as the writ is concerned it is before the court and affords record evidence as to what was done in obedience to it. It is true that the restricting this rule may impose an increased vigilance upon purchasers at judicial sales, to enable them to avoid the consequences incident to purchasers under illegal proceedings; but then vigilance and investigation into facts furnish the only repose worth possessing. It is also true that one class of the community may repose under the soothing influence of this judicial opiate, but it is at the sacrifice of the repose of all others who hold property. If it is a serious desecration of the right of property under judicial sales to overturn titles thus acquired, is it not a still more serious desecration of the right of property to take it from the legal owner without notice? Can the title to property be secure under a rule by which it may be seized and sold without the consent or knowledge of the owner? Can the purchaser find repose when he reflects that the same process of seizure without notice may be applied to him ? I think not. On the other hand it seems to me that a full hearing and fair opportunity to- defend would be better calculated to inspire confidence in the laws and give repose to the community. But be this as it may, it only remains for me to express what I understand the law to be and leave its modification, if oppressive, to another department of the government. When I came on the bench there had already been made several decisions on this important subject, dating back to an early period after the organization of the court. They were not in accordance with the opinions of the court, at least of several of its members, in every particular, but in view of their importance it was thought best to let them stand until upon full and deliberate consideration they should be settled upon more satisfactory grounds. I am aware that the subject has received the most careful and laborious examination by my associates on the bench, but as it has been my misfortune to differ with them upon several important points, the law has imposed upon me the duty of presenting the reasons which have influenced my opinion. Having done so it only remains for me to add that I hold the record offered in evidence void and incompetent in evidence, for the reason that it was made without notice to the defendant Woodruff or any appearance on his part, or any facts from which such notice might reasonably have been inferred.