(No. 21879.—

MATON BROS., INC., Appellee, *vs.* THE CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Appellant.

*Opinion filed June 15, 1934.*

VAUSE & KIGER, JOHN E. HOGAN, STEVENS & HERN-DON, and E. E. DOWELL, (R. D. STEVENSON, and A. D. STEVENS, of counsel,) for appellant.

CHURCH, HAFT, ROBERTSON, CROWE & SPENCE, and CARL H. PREIHS, for appellee.

Mr. JUSTICE HERRICK delivered the opinion of the court:

Maton Bros., Inc., plaintiff, sued the Central Illinois Public Service Company, a corporation, defendant, in the city court of the city of Pana to recover damages claimed to have been caused the plaintiff by the retarded production of roses and injury to rose plants resulting from the alleged escape of manufactured gas from the defendant's gas main into certain of the plaintiff's greenhouse buildings during the twenty-six months' period from October 3, 1927, to December 4, 1929. The plaintiff recovered a judgment for $89,320.16, which judgment was affirmed by the Appellate Court for the Third District. The cause comes here on a certificate of importance certified by that court.

The declaration consisted of a count in trespass *quare clausum fregit* and three counts in case. The first count charged that the defendant committed the trespass by entering the close of the plaintiff and constructing and maintaining gas mains therein. The three counts in case charge various acts of negligence on the part of the defendant in the maintenance of its gas mains whereby gas was permitted to escape. All the counts charged injuries to growing plants and roses of the plaintiff.

The defendant filed the general issue. On October 20, 1930, by agreement of the parties a jury was waived and the cause was submitted for trial to one of the judges of

the fourth judicial circuit court sitting as a judge of the city court of the city of Pana. The trial was begun the same day and testimony taken on that day. After the commencement of the hearing of the cause on October 20, by agreement of the parties the venue of the cause was changed to the circuit court of Shelby county. Thereafter the taking of testimony in the cause was resumed in the circuit court of Shelby county and the taking of evidence was then heard from day to day for approximately two weeks. Both the plaintiff and the defendant participated in the trial during the period last named. On December 6 the plaintiff made a motion for leave to file an amended first count to its declaration. The leave was granted, to which the defendant excepted. The defendant was ruled to plead to the amended first count by December 15, 1930. The amended first count was also in trespass *quare clausum fregit,* and charged, amongst other things, that the defendant "with force and arms, and without the knowledge, consent or approval of the plaintiff, broke and entered into the close or parcel of land described herein, so then and now owned and possessed by the plaintiff, and caused large quantities of gas to be carried through the said gas main which had theretofore been laid and constructed in the ground there belonging to the plaintiff, in such manner that the plaintiff could not by ordinary observation see or become aware of the presence of said gas main." Such amended count further charged that the maintenance of the main continued from October 3, 1927, to December 5, 1929; that the gas transported through the main was deleterious to human and plant life; that on October 3, 1927, the main became and was weakened, and from then to December 5, 1929, the defendant permitted large quantities of gas to escape into the premises of the plaintiff, and that the gas traveled into the plaintiff's greenhouses through the soil and along and through the drain tiles and permeated the greenhouses, to the injury and damage of the

plaintiff's rose plants growing in the greenhouses. To the amended count the defendant filed three pleas: (1) Not guilty; (2) leave or license; and (3) the Statute of Limitations. Replications were filed to the several pleas. The plaintiff then by leave of the court introduced further testimony.

It is contended by the plaintiff that a trespass *quare clausum fregit* suit is a local action and must be prosecuted in the forum having jurisdiction where the lands are situated, and that it is neither alleged in the declaration nor is it proved by the defendant that the lands are located within the city limits of the city of Pana. The plaintiff offered in evidence two deeds under which it acquired title to the two contiguous tracts, aggregating a total of 17.56 acres, and which are described in the declaration. The evidence also described the premises of the plaintiff. The court was correct in taking judicial notice that the lands were located within the city limits of Pana.

It is earnestly argued by the defendant that the circuit court of Shelby county was without jurisdiction to try an action of trespass *quare clausum fregit* involving real estate located in the city of Pana, in Christian county. No objection to the jurisdiction of the city court of the city of Pana was raised by the defendant in that court. A stipulation was made by which both parties to the litigation voluntarily consented to the transfer of the trial of the cause to the circuit court of Shelby county, where the trial was completed before the same judge who had heard the testimony in the city court.

It is claimed by the defendant that a new and different charge of trespass *quare clausum fregit* is made by the amended first count, and that the filing thereof constituted the commencement of a trespass *quare clausum fregit* action in the circuit court of Shelby county involving lands without such county. The action of trespass *quare clausum fregit* is a local action. The question is therefore presented

whether the circuit court of Shelby county had jurisdiction to try the cause of action stated by the amended first count of the declaration.

In a chancery proceeding involving the title to real estate the parties may by consent change the venue to another county, and the order of the court in which the suit was originally instituted, changing the venue, based upon the agreement of the parties, confers complete jurisdiction on the court of such county to which the venue was changed. (*Radcliff* v. *Noyes,* 43 Ill. 318.) A defendant sued in the wrong county may waive the want of jurisdiction of the court over him and submit himself to the court's jurisdiction either by his own acts or by his failure to object to the jurisdiction in apt time. *Kenney* v. *Greer,* 13 Ill. 432; *Traders' Mutual Life Ins. Co.* v. *Humphrey,* 207 id. 540.

In the case of *Sentenis* v. *Ladew,* 140 N. Y. 463, suit was brought in the Supreme Court of New York (which court corresponds with our circuit court) for trespass upon real estate situated in the State of Tennessee. The objection was urged that the trial court had no jurisdiction of the subject matter of the action because the action was local. The reviewing court stated in its opinion: "We entertain no doubt that the Supreme Court had jurisdiction to render the judgment awarded in this action. Under the constitution it has general jurisdiction in law and equity and of the class of actions to which this cause belongs. It is not prohibited by any statute from entertaining jurisdiction of a suit for damages for injuries to real property in another State. As was stated by Judge Earl in *Cragin* v. *Lovell,* 88 N. Y. 258: 'It is a general rule of law that actions for injuries to real property must be brought in the *forum res sitæ,* and this rule of law has been, so far as I can discover, universally sanctioned and upheld in this State.' But a party may waive a rule of law or a statute, or even a constitutional provision enacted for his benefit or protection, where it is exclusively a matter of private

right and where no considerations of public policy or morals are involved, and having once done so he cannot subsequently invoke its protection. [Citations omitted.] If the court acquires jurisdiction of the persons of the parties by due personal service of process or by their voluntary appearance and submission to its jurisdiction, and the defendant makes no objection to the authority of the court to hear the cause and the parties proceed to a trial upon the merits, the judgment rendered would be neither void nor voidable for want of jurisdiction but would be binding and conclusive upon the parties. The rule of law which the courts will enforce in this class of cases when objection is duly and seasonably made is waived by the plaintiff when he brings the action, and by the defendant if he pleads generally and goes to trial without insisting upon its benefits." The case of *Fribourg* v. *Pullman Co.* 176 Fed. 981, lays down substantially the same rules of law.

Chapter 146 of our statute provides for a change of venue in all civil cases both at law and in equity, including proceedings for the exercise of the right of eminent domain, from the county where the proceeding is originally instituted. Subdivision 2 of section 1 provides for a change of venue by the consent of the parties. The change of venue may also be procured upon the application of either party by complying with the statutory requirements. Section 14 of the act gives the court the power to change the venue without the application of either party. Where the change is desired by one party and opposed by the opposite party such change must be applied for promptly. The venue may be changed as to local actions as well as transitory actions. It certainly was not intended by the legislature, after the change of venue was granted and completed in a local action, that the plaintiff could not amend his pleadings or file additional causes· of action pertinent to the subject matter of the litigation even though the cause of action be local. The object of the statute permitting

changes of venue is to secure to the litigants fair trials. The change of venue carries with it and confers upon the court to which the change is granted, jurisdiction of the parties as well as the subject matter of the litigation. To hold a party plaintiff could not amend his declaration and state a new cause of action where the action involved real estate or trespass thereto after a change of venue would be to stifle the provisions of the statute and thwart its very purposes. The cause was commenced originally in a court that had jurisdiction of the subject matter of the litigation, and jurisdiction of the persons was regularly obtained. The original declaration contained a count of trespass *quare clausum fregit,* which was a local action. The venue having been changed by the consent of the parties, jurisdiction for all purposes was conferred upon the circuit court of Shelby county to try such cause. This jurisdiction extended to the right to grant leave to permit amendments to be made to the pleadings and to file additional causes of action that were relevant to the subject matter of the litigation. The circuit court of Shelby county did not err in granting the leave to file the amended first count of the declaration.

It is earnestly urged by the defendant that there is no evidence to support the charge of trespass made by the amended first count. In support of this contention the defendant claims that it is on the premises of the plaintiff by leave or license. The record shows that the defendant's predecessor in title, the Peoples Gas Company, obtained a parol license to lay its gas main from one only, of the two trustees who then held the title jointly to the premises. It is stated that the trustee who gave the license was the owner of a beneficial interest in the lands. This claim of the defendant cannot be sustained. It is fundamental that any parol leave or license terminates upon the transfer of title or upon the death of the licensor. The evidence shows that both of these events occurred before the plaintiff acquired

any title to the premises involved herein. Moreover, one of the two joint trustees would be without authority, acting alone, to grant a valid license. Quite aside from this, however, there is, we think, ample evidence to support not only the amended first count, but also, contrary to the defendant's contention, the three additional counts in case.

The evidence clearly establishes the fact that for more than two years immediately prior to December 5, 1929, the plaintiff's roses and plants in certain of its greenhouses on the *locus in quo* had been affected by some unknown cause. The plaintiff had gone to considerable expense and trouble to determine the cause of the injury to its plants and roses. By its servants it caused an excavation to be made for the purpose of taking up a drain pipe. At that time the ground was frozen. In making the excavation, as soon as the crust of frozen earth had been removed and a point reached below the frost line a strong odor of illuminating gas was detected. On the next morning the gas pipe of the defendant was discovered on the lands of the plaintiff. Sections of the gas pipe are in evidence in the cause. The pipe was rusted, corroded and full of holes. In the course of the excavation it was also discovered that the drain pipe or tile which led to the greenhouses of the plaintiff where the damage to the roses and plants occurred, was placed in the earth approximately three inches above the defendant's gas main. This excavation was made at the point of intersection of the tile and gas main. By reason of the perforated condition of the gas pipe large quantities of gas were permitted to escape into the earth and drain pipe and to permeate and diffuse through the soil and thus enter the plaintiff's greenhouses. The record shows that such gas in the greenhouses was not perceptible to the sense of smell. The proof shows that illuminating gas contains ethylene. Ethylene is a colorless hydrocarbon, highly deleterious to plant life even when the air contains but one part of illuminating gas to 100,000 parts of air.

The proof shows that one part of illuminating gas to 80,000 parts of air will cause freshly opened carnations to close although the gas in a much larger mixture is not perceptible to the sense of smell, nor has science invented any mechanism sufficiently sensitive to detect the presence of such gas. The proof further shows that illuminating gas escaping from a faulty main below the surface of the earth will travel through the ground below the crust as far as 2000 feet and diffuse itself into buildings and cellars at that distance from the point of escape. There was ample expert testimony in the record tending to establish that prior to December 5, 1929, the plaintiff's roses and rose plants showed the effects of injury from illuminating gas. The evidence further tended to prove that the plaintiff's plants and roses in certain of its greenhouses had for more than two years before December 5, 1929, suffered injuries from some unknown cause, the injuries being similar to those caused from illuminating gas. The evidence did not show that the officers of the plaintiff had any knowledge of the existence of the gas main on the premises of the plaintiff, and, moreover, they denied that they had any such knowledge prior to December 4, 1929. There is ample evidence in the record tending to prove the injuries claimed by the plaintiff to its roses and rose bushes were caused by gas which escaped from the defendant's gas main.

It is fundamental that where there is competent evidence in the record fairly tending to support the verdict and judgment of the trial court this court will not disturb the judgment of the trial court or the Appellate Court. Questions of fact and mixed questions of law and fact when determined by the Appellate Court are conclusive upon this court.

The defendant contends that the damages assessed by the trial court are excessive, and that the average production of the unaffected ranges is not to be taken as the measure of damages. In arriving at the amount of dam-

ages allowed by the trial court that court took into consideration the average production shown in all the unaffected greenhouses and the average production in the greenhouses affected during the period of time involved in the case. The greenhouses are grouped, and such a group constitutes what is designated as a "range." The court also took into consideration the least production in any of the greenhouses and in any range. The evidence shows that in every building or greenhouse, and in every range, every condition of soil, care, housing, temperature, fertilization and cultivation was identical with that in the greenhouses where the injury to the roses and rose plants occurred. The first three groups of greenhouses are on the 17.56 tract, two groups are across the street, and the remaining two groups, called "ranges," are about two blocks distant from the five greenhouses. Based upon this information given at the trial the court determined the probable productivity of the greenhouses in the two affected ranges, based upon the productivity over the same period of time for the unaffected greenhouses of the plaintiff. The trial court was not required to select any given greenhouse or set of greenhouses of the plaintiff as the measure of the probable production in the two affected ranges or groups of greenhouses. (8 R. C. L. sec. 28, p. 380.) While the amount of production in the affected ranges is not within the realm of certainty, yet where the conditions of the affected and unaffected ranges were the same except for the wrongful acts of the defendant, it was not error to ascertain the average production of the unaffected producing ranges and to estimate the average production of the affected ranges on that basis. *United States Smelting Co.* v. *Sisam,* 191 Fed. 293; *St. Louis Terminal Railway Ass'n* v. *Schultz,* 226 Ill. 409.

In determining whether the amount of damages allowed by the trial court is excessive, inasmuch as a jury was waived and the judgment of the trial court has been ap-

proved by the judgment of the Appellate Court, this court is limited to a review of any questions of law relating to the measure of damages which have been properly preserved for the consideration of this court. The method of preserving a question of law as to the rule to be applied for determining the damages in a case is by the submission of a proposition of law on such subject, with the request that the court hold the same as the law on that subject. No propositions of law were submitted to the trial court upon the legal question of the measure of damages. In the absence of such propositions of law there is not presented to this court, for ruling thereon, any question of law sufficient to authorize it to review the question as to whether the court followed the correct rule relative to the measure of damages. The question of damages is ordinarily a question of fact. It may at times become a mixed question of law and fact. No ruling of the court below having been obtained upon the question of law as to the correct measure of damages to be applied to the case at bar, such question is not before this court for review. *Foreman Trust and Savings Bank* v. *Bartlett,* 324 Ill. 238.

The defendant claims that the trial court admitted incompetent evidence. The objection is made that the court erred in receiving the testimony of an accountant upon the subject of production and prices received by the plaintiff for its products during the period in question. The books and records of the plaintiff were shown to have been kept in the usual course of business and not with the specific intent of using the compilation of such books and records as evidentiary matters in a contemplated suit for damages. There was before the court, including the oral statement of one of the officers of the plaintiff, all the matters and things upon which the auditor based his calculations, and full opportunity was given the defendant for cross-examination thereon. The weight and credit to be

given such testimony were for the trier of the facts. We find no reversible error in the admission of the evidence of this witness.·

It is urged that the trial court erred in sustaining objections to certain hypothetical questions propounded by the defendant to an expert witness testifying on behalf of the defendant. No offer of proof was made by the defendant as to what it expected to prove by the testimony of such expert witness. We have examined the hypothetical questions in the record. Such questions did not detail the basis of the hypothesis but are based upon the assumption that the witness was present at the trial and had heard all the evidence and from such evidence had formed an opinion concerning the cause of injury to the plants and roses of the plaintiff. Based upon this hypothesis the witness was asked to express such an opinion. There was a conflict in the evidence as to what caused the injury to the property of the plaintiff. It was not for the witness to state his opinion based upon the testimony he had heard. To permit that would have been to permit the witness to invade the province of the jury—the court in the instant case. Where there is a conflict in the evidence and a hypothetical question is sought to be grounded upon the fact that the expert witness has heard the evidence in the case, to allow the witness to answer permits him to determine what credit he will give to the testimony of certain witnesses and what testimony he discredits. That is not the function of an expert witness. He is permitted to express his opinion upon an assumed or stated set of facts, but he cannot invade the province of the jury by hearing and weighing the evidence at the trial and from such consideration express his opinion upon one of the contested issues involved in the case. (*Pyle* v. *Pyle,* 158 Ill. 289; *City of Decatur* v. *Fisher,* 63 id. 241; *Chicago and Alton Railroad Co.* v. *Springfield and Northwestern Railroad Co.* 67 id.

142; *Chicago, Rock Island and Pacific Railroad Co.* v. *Moffitt,* 75 id. 524; *Louisville, New Albany and Chicago Railway Co.* v. *Shires,* 108 id. 617; *Chicago and Alton Railroad Co.* v. *Glenny,* 175 id. 238.) The trial court did not err in sustaining the objection to the hypothetical questions propounded to such expert witness.

Other rulings of the court which are claimed to be erroneous, made in the reception of the evidence, are called to our attention. We do not find any prejudicial error in any of such rulings. The cause being tried before the court, the presumption is that the court did not consider any incompetent evidence that may have been received. There is sufficient competent evidence in the record fairly tending to sustain the judgment recovered.

The plaintiff assigned cross-errors in the Appellate Court and has assigned such in this court. By such assignment it urges that the trial court erred in failing to allow damages to it for injuries sustained to 56,000 Premier rose plants in range No. 2 alleged to have been affected by gas. While there is evidence tending to prove such injury, we are satisfied that the judgments of the trial court and Appellate Court are correct upon that issue, and the cross-errors cannot be sustained. The judgment against the defendant is very large, but the financial injuries sustained by the plaintiff were extremely serious.

We have reviewed all the matters in the record to which our attention has been directed by the defendant so far as we are permitted under the law to review such issues and rulings and find no reversible error therein.

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*

Mr. Justice Shaw took no part in this decision.