## The Toledo, Wabash and Western Railway Co.

### *v.*

### Edward H. Williams.

1. ABATEMENT—*waiver of objection that suit is brought in wrong county.* Where a defendant is alleged to have been improperly sued in a foreign county, the objection must be taken in apt time, or it will be regarded as waived. It is too late to urge it after judgment. Section 2 of the Practice act of 1872 must receive the same construction given to a similar provision in the Revised Statutes of 1845.

2. PLEADING AND EVIDENCE—*matter of surplusage need not be proved.* In an action against a railway company, to recover damages for an assault and battery by one of its servants, it is not necessary to state the name of such servant, and, if stated, the name may be regarded as surplusage, and need not be proved as alleged.

3. RAILROADS—*regulation for the protection of ladies at depot.* Where several railway companies have provided in their depot building, in a

large city, separate waiting rooms for ladies and gentlemen, a regulation that no gentleman without a lady shall be allowed to enter and remain in the ladies' room, is not only reasonable, but absolutely necessary to enable the companies to discharge a duty they owe the public, of protecting females, while at the depot, from violence and insult.

4. SAME — *not liable for enforcing reasonable rules.* Where a man, without any lady, went into the ladies' waiting room of a union depot in a city, there being a different room provided for gentlemen, and, about dusk, went into the "ladies' private room," and, when ordered out by a servant of one of the companies using the depot, refused to go, and was then taken by the collar and put out upon the platform, he receiving no personal injuries, and his clothes not being torn: *Held*, in an action on the case for the acts of such servant, against the railway company, that the plaintiff, under the circumstances, was not entitled to recover.

5. EVIDENCE—*cross-examination of witness.* A wide latitude is allowed in the cross-examination of a witness, but he is entitled to be protected by the court from unnecessary insult and abuse by counsel. A witness can not be impeached, on cross-examination, by questions irrelevant to the issue, which only tend to bully and degrade him.

APPEAL from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

This was an action on the case. brought by Edward H. Williams against The Toledo, Wabash and Western Railway Company, to recover damages for an alleged wrongful assaulting, beating, etc., of the plaintiff by a servant of the defendant. A trial was had, which resulted in a verdict and judgment in favor of plaintiff for $50. On the cross-examination of R. E. Goodrich, one of defendant's witnesses, the following questions were put to the witness by plaintiff's counsel:

"So your memory is peculiarly shaky on putting men out of that room?" The question was objected to as disrespectful and offensive, and objection overruled.. Before the question was answered, the following was asked: "Come down to bed-rock, and answer." The same objection was made as before. and overruled. The witness answered: "When a person is to be put out, I call another to do that duty." Question: "If Williams had been a little fellow, you would have done it yourself?" Same objection as before, and over-

ruled. Question: "As I understand it, the T., W. and W. R. W. Co. sell tickets there, and there is no other place in Quincy, unless a fellow jumps aboard after the train starts?" Objected to as irrelevant and offensive. Objection overruled. Question: "I understand you drive passengers around to another room to get water?" Objected to as offensive, not in proper form, and not warranted by answers of the witness. Objection overruled. The material facts of the case are stated fully in the opinion.

Messrs. DUMMER & BROWN, for the appellant.

Messrs. EPLER & CALLON, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Appellee's declaration contains two counts. The substance of his cause of action, as therein stated, is, that, having purchased of appellant a ticket entitling him to be carried by it from Quincy to Jacksonville, and while awaiting the departure of appellant's train, at Quincy, in a room set apart by it and used for passengers intending to depart by its trains. he was assaulted by the defendant's servant, one R. E. Goodrich, by whom he was there insulted, beaten, etc.

The objection that appellant could not be sued for the injuries complained of, in Morgan county, if tenable at all, should have been raised before judgment. The same rule of construction must, in this respect, be applied to section 2 of the act in force July 1st, 1872, (Laws of 1872, p. 338,) as has been held to apply to the second section of the Practice act, in the revision of 1845. Since *Kenney et ux.* v. *Greer*, 13 Ill. 432, (decided at the December term, 1851,) that section has uniformly been construed as giving the defendant a privilege, merely, which he will be regarded as having waived, unless he makes his objection in apt time. *Gillilan et al.* v. *Gray et al.* 14 Ill. 416; *Waterman* v. *Tuttle*, 18 id. 292; *Hamilton* v.

*Dewey*, 22 id. 490; *Hardy et al.* v. *Adams et al.* 48 id. 532.
Nor do we consider the objection well taken, that the evidence
should have shown that the injuries received were inflicted
by the identical servant named in the declaration. We are
of opinion that so much of the declaration as gives the name
of such servant, is *surplusage.* The only fact material was,
that the alleged wrong was done by some one occupying, as
to the wrongful act, the relation of servant to appellant. If
appellee received the injury complained of, from a person
thus representing appellant, its liability was fixed, and could
not be affected by the circumstance that the servant was
known by some other name than Goodrich.

We are of opinion, however, on the evidence, appellee has
no cause of action, and the judgment should have been
against him. His own evidence is, after getting a ticket, he
went into the ladies' room to wait for a train. After he had
been in there fifteen or twenty minutes, he saw the door lead-
ing into the little room open; that two or three little girls
and a little boy were in there, and he went in to get some
water. "Some one said, roughly: come out of there; said so
twice; I looked around and saw a gentleman whom I had
seen around the building. I said to him I wanted a drink.
He said it was no place for me, and wanted me to get out. I
was not in the habit of being talked to in that way, and told
him so. He said I must go out or he would put me out. I
talked to him some, and he said I was a d——d loafer; took
hold of my collar and pushed me out of the door on to the
platform." He says he " received no injuries whatever, no
bruises, no bones broken and no clothes torn." He had no
lady with him, and his excuse for being in the ladies' room
was, the gentlemen's room was too filthy. The little room
into which he ·had gone was the ladies' water-closet, where
there was also a water tank.

The occurrence was a little after dark. The evidence shows
that there was fire, seats and lights in the gentlemen's room,
and also water. There were signs plainly printed on the

doors, showing which rooms were for gentlemen and which for ladies, and over the entrance to the little room, from which appellee was ejected, is printed the words: "*Ladies' Private Room.*" The building was a union depot, used by three other roads in common with appellant, for passengers arriving and departing by their trains, at Quincy, and the instructions of those in charge of the depot were, no gentleman, unless accompanied by a lady, was allowed to enter the ladies' room, and no gentleman was allowed to enter the ladies' private room. This was not only a reasonable regulation, but one which was absolutely necessary, to enable the companies using the depot to discharge a duty they owe to the public, of protecting females arriving and departing by their trains, while awaiting at the depot, from violence and insult, and it was the duty of those in charge to strictly and rigidly enforce it.

Appellee's excuse for entering the ladies' room is not at all admissible. The fact that it was the ladies' room, was notice to him that it was no place for him. He had no claim to encroach upon conveniences provided exclusively for ladies, even if the gentlemen were not properly provided with accommodations.

If appellee, by the negligence of appellant, was denied accommodations to which he was entitled, his remedy was directly against appellant for that negligence, and not to intrude upon the privacy of ladies, and deny to them the rights to which they were entitled.

When appellee entered the ladies' water closet, it is difficult to believe he did not comprehend the uses to which it was appropriated. Its location and appointments, alone, even if he was unable to read the sign above the door, it would seem, ought to have been abundantly sufficient for that purpose. But if this was not so, surely, when he was notified it was no place for him, and he was ordered out, he knew it; and if he had possessed ordinary sensibilities, he would, instead of refusing to retire, have explained his mistake, and retired at once.

The language applied to appellee may have been more peremptory than was necessary, but, then, appellee's conduct, unexplained, was such as to arouse unfavorable suspicions, and, at a depot accommodating the number of important railroads this does, in a city having the population of Quincy, it is reasonable to expect there may frequently be persons of reckless and vicious habits, against whom there is no safety except by prompt and energetic action; and, as between strangers, it may often be difficult to distinguish between those who mean well and those who mean evil, except by their conduct. Those who deal with the public must be held to respect the feelings as well as the rights of those with whom they deal, but we are not prepared to hold that the mere fact a servant shall use more peremptoriness of tone, in making a request, than he should, gives to the person to whom it is addressed the right to persist in transgressing a rule, the enforcement of which is essential to the comfort or safety of others, and especially where the rule is for the benefit of ladies or children, or helpless persons. The rights of those for whose benefit the rule is adopted, are, in such cases, of paramount consideration.

Objection was taken to a number of questions put by appellee's counsel, in cross-examination, to a witness of the appellant. These objections should have been sustained. The questions were objectionable in form, irrelevant to the issue, and only tended to bully and degrade the witness. A witness can not be impeached in this way. A wide latitude is allowed in the cross-examination of a witness, but he is entitled to be protected by the court from unnecessary insult and abusiveness by counsel.

The judgment of the court below is reversed.

*Judgment reversed.*